**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ETHYLE M. LAU, Individually,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | No. 06-CV-300-TCK-SAJ |
| ) | |
| **CREDIT CONCEPTS, INC.,** ) | |
| **CLIENT SERVICES, INC., and** ) | |
| **BANK OF AMERICA, N.A. (USA),** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Before the Court is Bank of America N.A.'s ("Bank of America") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 36). For the reasons set forth below, the motion is denied in its entirety.[1]

**I.   Allegations in First Amended Complaint**

Plaintiff Ethyle M. Lau ("Plaintiff") alleges the following facts in her First Amended Complaint. On October 25, 2005, Plaintiff received a call from Defendant Credit Concepts, Inc., which is a collection agency (the "Collection Agency").[2] The Collection Agency obtained Plaintiff's Bank of America credit card number in order to pay a debt placed for collection by Defendant Bank

---

[1] Defendant also filed a Motion to Dismiss the original Complaint (Doc. 15), which is denied as moot.

[2] Client Services, Inc. is a named Defendant that is associated with Credit Concepts, Inc. All allegations in the First Amended Complaint against the Collection Agency refer to both Client Services, Inc. and Credit Concepts, Inc. For purposes of this Order only, these two Defendants are referred to collectively as the "Collection Agency."

1

of America N.A.[3]  However, this debt was owed to Bank of America by an individual other than Plaintiff.  The Collection Agency and Bank of America acted intentionally and in concert to defraud Plaintiff and to obtain her authorization to pay debt that did not actually belong to her.  Plaintiff notified Bank of America that she disputed the charge.  Bank of America failed to properly and reasonably investigate the disputed charge.  (First Am. Compl. ¶¶ 8-18.)

Plaintiff brought suit against the Collection Agency for violation of the Fair Debt Collection Practices Act (Claim I); against Bank of America for violation of the Fair Credit Billing Act ("FCBA") (Claim II), and against all Defendants for committing the tort of deceit under Oklahoma law (Claim III).  Bank of America moved to dismiss the two claims asserted against it.

**II.     Motion to Dismiss Standard**

For a motion made under FED. R. CIV. P. 12(b)(6) to succeed, a defendant must show that, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted.  It must appear "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In evaluating a motion to dismiss, a court must accept all well-pled allegations as true and indulge all reasonable references in favor of plaintiff.  *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997); *Weatherford v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir. 1987).  "'When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"

---

[3] Plaintiff, therefore, gave the Collection Agency her Bank of America credit card number to pay debt owed to Bank of America.

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.     Discussion**

    A.    <u>"Billing Error" Under the FCBA</u>

The FCBA, codified at 15 U.S.C. § 1666, *et seq.*, is Part D of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1631, *et seq.* TILA is a remedial act intended to protect consumers, and courts have liberally construed its provisions in favor of consumers. *See Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 790 (W.D. Ky. 2003). The overarching purpose of TILA is "to protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of credit." *Jones*, 747 F.2d at 1040.

The FCBA is a specific portion of TILA that sets forth a dispute resolution procedure for the correction of "billing errors" on credit card statements. *See* 15 U.S.C. § 1566; 12 C.F.R. § 226.1 (stating one purpose of regulation is to "provide a means for fair and timely resolution of credit billing disputes"); *Gray v. Am. Express Co.*, 743 F.2d 10, 13 (D.C. Cir. 1984) ("Fair Credit Billing Act seeks to prescribe an orderly procedure for identifying and resolving disputes between a cardholder and a card issuer as to the amount due at any given time."). Under the FCBA, a cardholder who believes his credit card statement contains a billing error may send the creditor a written notice indicating the amount of the error and the reasons supporting that belief. *See Gray*, 743 F.2d at 13 (citing *Am. Express Co. v. Koerner*, 452 U.S. 223, 235 (1981)). Upon receipt of this notice, certain and specific obligations are imposed upon the creditor, including conducting an investigation and sending a written explanation of its findings before attempting to collect the

3

amount. *See id.* at 13-14. If a creditor does not comply with the requirements of the FCBA, the creditor may liable to the cardholder for actual damages, twice the amount of the finance charge, and the cardholder's costs and attorney's fees. *Id.* at 14.

Bank of America argues that Plaintiff cannot state a claim under the FCBA because Plaintiff has failed to allege a "billing error." *See Stafford*, 262 F. Supp. 2d at 790 ("As a preliminary hurdle to asserting [a claim under the FCBA], a plaintiff must prove a 'billing error.'"). Pursuant to 15 U.S.C. § 1666(b), a "billing error" consists of any of the following:

> *(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.*
> *(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.*
> (3) A reflection on a statement of goods or services not accepted by the obligor . . . or not delivered to the obligor . . . in accordance with the agreement made . . . .
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor . . . .
> (5) A computation error or similar error of an accounting nature of the creditor on a statement.
> (6) Failure to transmit the statement required under § 1637(b) of this title to the last address of the obligor . . . .
> (7) Any other error described in regulations of the Board.

(emphasis added). Plaintiff contends that the charge on her Bank of America credit card statement for payment of debt to Bank of America, which was solicited by the Collection Agency, is a "billing error" that falls into the first and second categories of 15 U.S.C. § 1666(b). That is, Plaintiff claims the disputed charge "was not made to the obligor" and/or was a charge "for which she request[ed] additional clarification including documentary evidence thereof." *See* 15 U.S.C. § 1666(b)(1) and (2). Bank of America contends the disputed charge cannot be a "billing error" because Plaintiff admits that she authorized the charge and because Bank of America's real dispute is with the

4

Collection Agency that induced her to make the payment. There is scant case law to assist the Court in deciding this issue.

Bank of America relies on *Willhelm v. Eastern Airlines, Incorporated*, Case No. 89-C-5584, 1990 WL 43513 (N.D. Ill. Apr. 5, 1990), as authority for its position. In *Willhelm*, the plaintiff claimed to have been fraudulently induced to purchase an airline ticket, and the plaintiff sued both the airline and the credit card company. Deciding a "question of first impression," the court held that a fraudulently induced credit transaction is not a billing error under the FCBA. *Id.* at * 1. The court reasoned:

> It is evident that plaintiff is merely seeking to have Discover "run interference" for him with respect to his alleged dispute with Eastern Airlines. In essence, he is attempting to use the provisions of § 1666 to create a collateral dispute over his purchase of the round trip airline ticket. Nothing in the wording of § 1666 or the legislative history to the statute supports plaintiff's efforts. In point of fact, his reading of the statute would force credit card companies to play the role of omnipresent commercial ombudsmen.

*Id.* at * 2.

Plaintiff relies on case law holding that a "wrong-person error," or a credit card company's demand for payment from someone who is allegedly not an obligor on the account, may constitute a "billing error" under the FCBA. *See, e.g., Belmont v. Assocs. Nat'l Bank*, 119 F. Supp. 2d 149, 158 (E.D.N.Y. 2000) (holding that a "wrong person" error, which consisted in that case of charging a debtor's father after the father had removed his name from the account, qualified as a "billing error" under § 1666(b)(1) and (2)); *Stafford*, 262 F. Supp. 2d at 791 (holding that a "wrong person" error, which consisted in that case of charging a person who claimed to have never opened the account, qualified as a billing error under the FCBA).

In consideration of the remedial purpose of the FCBA, the admonition to interpret the FCBA in favor of consumers, and the unique circumstances presented in this case, the Court concludes that Plaintiff's allegations are sufficient to support the finding of a "billing error" under § 1666(b)(1) and (2). First, based on the plain language of the statute, the Court views the alleged billing error in this case as one that "was not made to the obligor" because Plaintiff alleges that someone else's name should have been turned over to the Collection Agency and ultimately billed for the disputed charge. *See* 15 U.S.C. § 1666(b)(1). This is an unusual application of this section because a third party collected the payment on behalf of the creditor. However, Plaintiff clearly alleges that Bank of America made a mistake and that she complained about it, which fits squarely within the FCBA's purposes. As to 15 U.S.C. § 1666(b)(2), the Court must assume, for purposes of this motion, that Plaintiff properly "requested additional clarification, including documentary evidence" along with her complaint. (*See* First Am. Compl. ¶ 15 ("Plaintiff properly disputed the credit card charge . . . .").) Thus, the disputed charge also qualifies as a billing error under that section. As stated by one court, "the language of the statute requires only that the Plaintiff assert a billing error and ask for additional clarification about that error." *See Raney v. First Nat'l Bank of Neb.*, Case No. 06-8-DLB, 2006 WL 2588105 (E.D. Ky. Sept. 8, 2006) (reasoning that undisclosed finance charges may constitute billing errors under broad and remedial reading of the statute where plaintiff requested clarification about the charge).

Second, the Court finds that existing case law supports a finding of a billing error and that Bank of America's reliance on *Willhelm* is misplaced. The facts presented in this case are distinguishable from the facts in *Willhelm* because, in this case, the disputed charge on the credit card statement was a payment to satisfy debt owed to the credit card company issuing the statement,

rather than a payment to a third-party merchant. Unlike the plaintiff in *Willhelm*, Plaintiff is not asking Bank of America to merely "run interference" for her in the dispute with the Collection Agency or attempting to create a "collateral dispute" with Bank of America. Bank of America, and not the Collection Agency, is likely in the best position to determine whether the charge on the credit card statement was properly owed by Plaintiff, and Bank of America's conduct in addressing Plaintiff's complaint is at the heart of the dispute. In *Willhelm*, the credit card company had nothing to do with the dispute between the plaintiff and the airline regarding whether the plaintiff should have been required to pay for the ticket.

Instead, the Court finds this case more analogous to the "wrong person" errors at issue in *Belmont* and *Stafford*. Like the plaintiffs in those cases, Plaintiff alleges that Bank of America charged the wrong person, albeit through the Collection Agency. In addition, Plaintiff's complaint regarding fraudulent conduct on the part of Bank of America in turning her name over to the Collection Agency is somewhat analogous to a complaint regarding a fraudulently obtained finance charge, which has been held to constitute a billing error under the FCBA. *See Raney*, 2006 WL 2588105. Accordingly, the Court concludes that Plaintiff has pled sufficient facts to meet the "billing error" requirement of the FCBA, and Bank of America's motion to dismiss the second claim is denied.

      B.     <u>State Law Claim for Deceit</u>

The third claim in Plaintiff's First Amended Complaint alleges that all Defendants acted in concert to injure and deceive Plaintiff, "all in violation of Title 76 OS § 1 *et seq.*" (First Am. Compl. ¶ 29.) Bank of America argues that Plaintiff has failed to state a claim because Section 1 of Title 76 of the Oklahoma Statutes, which is merely a statement of rights, does not create an

7

independent cause of action.[4] However, Bank of America has blatantly ignored the "*et seq.*" in the First Amended Complaint. Section 2 of Title 76 of the Oklahoma Statutes provides that "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." OKLA. STAT. tit. 76, § 2; s*ee also Cooper v. Parker-Hughey*, 894 P.2d 1096, 1100 (Okla. 1995) (explaining that this statute "permits one damaged by another's deceit to receive damages"). In addition, Section 4 of Title 76 provides that "one who practices a deceit with intent to defraud the public . . . is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." OKLA. STAT. tit. 76, § 4. The Court will not ignore Plaintiff's use of the phrase "*et seq.*" and artificially limit Plaintiff's claim to one brought solely pursuant to Section 1 of Title 76. Accordingly, Bank of America's motion to dismiss the third claim is denied.

Bank of America Motion to Dismiss the First Amended Complaint (Doc. 36) is DENIED; Bank of America's Motion to Dismiss the original Complaint (Doc. 15) is DENIED as moot; and Bank of America N.A.'s Motion to Stay Proceedings (Doc. No. 49) is DENIED as moot.

IT IS SO ORDERED this 20th day of February, 2007.

*/s/ Terence Kern*

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[4] Bank of America does not raise any substantive arguments regarding the sufficiency of the allegations but merely argues that the cause of action pled by Plaintiff does not exist.